IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

May 19, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| LARRY DEMPSEY and wife, LISA DEMPSEY, Co-Administrators of the Estate of Larry Jason Dempsey, | ) HAMILTON CIRCUIT<br>) C. A. NO. 03A01-9709-CV-00436<br>)<br>) |
| Plaintiffs-Appellants | )<br>)<br>)<br>)<br>)<br>) |
| vs. | ) HON. SAMUEL H. PAYNE<br>) JUDGE<br>)<br>)<br>)<br>)<br>) |
| INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMEN- TAL IRONWORKERS, LARRY G. DAVIS, individually and as agent and employee of the International Association of BRIDGE, Structural and Ornamental Ironworkers, KIRBY BUILDING SYSTEMS, INC., FREELAND HARRIS, d/b/a Freeland Harris Consulting Engineer and DONALD LOUIS WAMP, d/b/a The Wamp Alliance, | ) AFFIRMED AND REMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants-Appellees | ) |

L. HALE HAMILTON, Spears, Moore, Rebman & Williams, Chattanooga, for Appellants.

DANIEL J. RIPPER and GERARD M. SICILIANO, Luther - Anderson, PLLP, Chattanooga and LYNN AGEE and LEE ANDERSON, Agee & Allen, Chattanooga, for BRIDGE, Structural and Ornamental Ironworkers, Local 704, Chattanooga Ironworkers Joint Apprentice Committee and

Larry G. Davis, individually and as an agent and employee of the Union the Joint Apprentice Committee.

DONALD LOUIS WAMP, SR., Pro Se.


O P I N I O N


McMurray, J.


This is a wrongful death action. The plaintiffs charge generally that the defendants failed to provide a safe place for the decedent to work or were negligent or breached a contract with the deceased in failing to train or supervise him while he was attempting to do the work he was assigned. The trial court granted summary judgments or motions to dismiss in favor of all the defendants. This appeal resulted. We affirm the judgment of the trial court.


**FACTS**


Kenco Group, Inc., (Kenco), at the time of the accident in question was the owner of a parcel of land upon which a building was to be constructed. Kenco contracted with Morgan Construction Company (Morgan) to construct a warehouse building on its property. Morgan entered into a subcontract with Burroughs Metal Buildings,

2

Inc., (Burroughs), the deceased's employer, for installation of the roof on the building.[1]

Burroughs sought to obtain employees to work on the Kenco Project from Local 704 of the BRIDGE, Structural and Ornamental Ironworkers Union (Union). The Union and its employees, agents and organizations will be referred to collectively as the "Union defendants." Under the applicable Union contract, if the Union could not timely provide workers, the employer was allowed to directly employ workers without Union intervention. The Union was unable to supply workers for Burroughs. Burroughs hired the deceased, Larry Dempsey, and advised him to go to the Union school and fill out the necessary documents to apply for the union apprenticeship program. The deceased eventually went to the school and obtained the necessary application documents, however, he did not return all the documents to the Union.

While working on the Kenco project, the deceased fell approximately 35 feet from the roof onto the floor of the building. He died from the injuries sustained in the fall. At the time of his injury and death, the deceased had not been accepted into the

---

[1]Travelers Insurance Company, the Worker's Compensation carrier for Burroughs was allowed to intervene, however, there is no issue relating to Travelers on this appeal. (Reliance Insurance Company was subsequently substituted in place of Travelers.)

apprentice program and had never attended the Union's apprenticeship program.

The defendant, Donald Louis Wamp, d/b/a The Wamp Alliance (Wamp) was employed to do the architectural drawings for the building. There was no express contract by which Wamp was required to perform any other duties.

The defendant, Larry G. Davis, (Davis) was sued in his individual capacity and as an agent and employee of the Union. Additionally, the plaintiffs sought, by amendment, to make Steve King, individually and as an agent of the Union, a defendant in this action. Mr. King was allegedly an agent of the Union's Joint Apprenticeship Committee of Local 704. The court denied the motion to amend.

The defendant, Freeland Harris, d/b/a Freeland Harris Consulting Engineer was voluntarily dismissed by the plaintiffs. All other parties moved either for summary judgment pursuant to Rule 56, or to dismiss pursuant to Rule 12, Tennessee Rules of Civil Procedure. Pursuant to the motions, summary judgments were granted in favor of all defendants except the Union defendants. The complaint as to the Union defendants was dismissed pursuant to

4

Rule 12, Tennessee Rules of Civil Procedure.[2]  Plaintiffs charge that the action of the court in disallowing the King amendment and in dismissing the case was reversible error.  Specifically, the plaintiffs present the following issues for our review:

    I.   Did the trial court err in granting summary judgment for defendants Local 704 of International Brotherhood of BRIDGE, Structural and Ornamental Ironworkers; Larry Davis, individually and as agent of Local 704 of the International Joint apprenticeship committee, Brotherhood of BRIDGE, Structural and Ornamental Ironworkers and in denying plaintiffs' motion to amend the complaint to add Steve King as a defendant?

    II.  Did the trial court err in granting summary judgment to the owner of the land and building, Kenco Group, Inc., on which the decedent was working when he fell to his death?

    III. Did the trial court err in granting summary judgment to Kirby Building Systems, Inc., the manufacturer of the structural steel building being constructed by the deceased and others, on which the deceased and others, were working at the of his death?

    IV.  Did the trial court err in granting summary judgment (motion to dismiss) to the defendant Donald Louis Wamp, d/b/a the Wamp Alliance, the named architect on the project (Kenco Building)?

### STANDARD OF REVIEW

The standards governing a review of a trial court's grant of summary judgment are well-settled:

---

[2]A third party complaint by Kenco against Morgan and Burroughs was dismissed as being moot after the dismissal of Kenco.

5

> Tenn.R.Civ.P. 56.03 provides that summary judgment
> is only appropriate where: (1) there is no genuine issue
> with regard to the material facts relevant to the claim
> or defense contained in the motion, <u>Byrd v. Hall</u>, 847
> S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is
> entitled to a judgment as a matter of law on the undis-
> puted facts.  <u>Anderson v. Standard Register Co.</u>, 857
> S.W.2d 555, 559 (Tenn. 1993).  The moving party has the
> burden of proving that its motion satisfies these
> requirements.  <u>Downen v. Allstate Ins. Co.</u>, 811 S.W.2d
> 523, 524 (Tenn. 1991).
>
> The standards governing the assessment of evidence
> in the summary judgment context are also well estab-
> lished.  Courts must view the evidence in the light most
> favorable to the nonmoving party and must also draw all
> reasonable inferences in the nonmoving party's favor.
> <u>Byrd</u>, 847 S.W.2d at 210-11.  Courts should grant a
> summary judgment only when both the facts and the
> conclusions to be drawn from the facts permit a reason-
> able person to reach only one conclusion.  <u>Id.</u>

<u>Carvell v. Bottoms</u>, 900 S.W.2d 23, 26 (Tenn. 1995).

The standards of review for a trial court's action on a motion

to dismiss are likewise well-settled.  When considering a Rule 12

motion to dismiss, we are required to accept the allegations of the

complaint as true. <u>Greenhill v. Carpenter</u>, 718 S.W.2d 268 (Tenn.

1986). Our scope of review is <u>de novo</u> with no presumption of

correctness. <u>Montgomery v. Mayor of the City of Covington</u>, 778

S.W.2d 444 (Tenn. App. 1988).

> The sole purpose of a Tenn. R. Civ. P. 12.02(6)
> motion to dismiss is to test the legal sufficiency of the
> complaint. <u>Sanders v. Vinson</u>, 558 S.W.2d 838, 840 (Tenn.
> 1977); <u>Holloway v. Putnam County</u>, 534 S.W.2d 292, 296
> (Tenn. 1976). These motions are not favored, <u>see</u> <u>Moore v.
> Bell</u>, 187 Tenn. 366, 369, 215 S.W.2d 787, 789 (1948), and
> are now rarely granted in light of the liberal pleading

6

standards in the Tennessee Rules of Civil Procedure. <u>See</u>
<u>Barish v. Metropolitan Gov't</u>, 627 S.W.2d 953, 954 (Tenn.
Ct. App. 1981); 5A Charles A. Wright & Arthur R. Miller,
Federal Practice & Procedure §§ 1356 & 1357 (2d ed. 1990)
("Wright & Miller").

Tenn. R. Civ. P. 12.02(6) motions are not designed
to correct inartfully worded pleadings. Wright & Miller
§ 1356, at 296. And so a complaint should not be dis-
missed, no matter how poorly drafted, if it states a
cause of action. <u>Paschall's, Inc. v. Dozier</u>, 219 Tenn.
45, 50-51, 407 S.W.2d 150, 152 (1966); <u>Collier v. Slayden</u>
<u>Bros. Ltd. Partnership</u>, 712 S.W.2d 106, 108 (Tenn. Ct.
App. 1985). Dismissal under Tenn. R. Civ. P. 12.02(6) is
warranted only when no set of facts will entitle the
plaintiff to relief, <u>Pemberton v. American Distilled</u>
<u>Spirits Co</u>., 664 S.W.2d 690, 691 (Tenn. 1984), or when
the complaint is totally lacking in clarity and specific-
ity. <u>Smith v. Lincoln Brass Works, Inc</u>., 712 S.W.2d 470,
471 (Tenn. 1986).

While it is not our role to create claims where none
exist, <u>Donaldson v. Donaldson</u>, 557 S.W.2d 60, 62 (Tenn.
1977), we must always look to the substance of a pleading
rather than to its form. <u>Usrey v. Lewis</u>, 553 S.W.2d 612,
614 (Tenn. Ct. App. 1977). Thus, when a complaint is
tested by a Tenn. R. Civ. P. 12.02(6) motion to dismiss,
we must take all the well-pleaded, material factual
allegations as true, and we must construe the complaint
liberally in the plaintiff's favor. <u>Lewis v. Allen</u>, 698
S.W.2d 58, 59 (Tenn. 1985); <u>Holloway v. Putnam County</u>,
534 S.W.2d at 296; <u>Lilly v. Smith</u>, 790 S.W.2d 539, 540
(Tenn. Ct. App. 1990).

<u>Dobbs v. Guenther</u>, 846 S.W.2d 270 (Tenn. App. 1992).

**THE UNION DEFENDANTS**

The plaintiffs have made a multiplicity of allegations against

the Union defendants.  In sum and substance, however, the allega-

tions can be summarized as charging the Union defendants in-

7

dividually or collectively with failing to provide the decedent with a safe place to work or negligent breach of a collective bargaining agreement (contract) in failing to properly train or otherwise prevent the decedent from undertaking duties for which he was not qualified. Our inquiry is whether the Union defendants were under any duty to provide a safe place or insure that a safe place was provided for the deceased to work. After our examination of the relevant authorities, we are of the opinion that the Union defendants were under no such duty under the circumstances of this case. As noted by the appellants, the Union defendants rely upon Thompson v. Superior Fireplace Co., 931 F.2d 372 (6th Circuit, 1991). Appellants insist that the case under consideration is distinguishable from Thompson, however, the appellants have alleged no facts in the complaint which, in our opinion, would exclude this case from the operation of the rules enunciated in Thompson. Further, the appellants do not cite any authority to demonstrate that Thompson is inapplicable in this case.

In Thompson, the plaintiff was injured while working on a hydraulic press brake at the Superior Fireplace Company in Union City, Tennessee. Among others, the defendant sued the Sheet Metal Workers International Association, AFL-CIO, No. 4. The Union, in Thompson, filed a motion for summary judgment. The plaintiff argued that the Union's summary judgment motion should not have been granted because the Union had both a common law and contrac-

8

tual duty to provide the plaintiff with a safe working environment. The District Court found that, under Tennessee Law, "the duty to furnish an employee a reasonable safe place to work is the duty of the employer, and that the duty is 'personal, continuous, and non-delegable.'"  Citing Hamilton v. Bean, 745 F.2d 1034 (6th Cir. 1984) and Overstreet v. Norman, 314 S.W.2d 47 (Tenn. App. 1957). Thompson, in due course made its way to the Sixth Circuit Court of Appeals.  The Sixth Circuit cited IBEW, AFL-CIO v. Hechler, 481 U.S. 851 (1987) and quoted therefrom as follows:

> Under the common law ... it is the employer, not a labor union that owes employees a duty to exercise reasonable care in providing a safe workplace.
>
> *       *       *       *
>
> Another party, such as a labor union, of course, may assume a responsibility towards employees by accepting a duty of care through a contractual arrangement.
>
> *       *       *       *
>
> Respondent's allegations of negligence assume significance if — and only if — the Union, in fact, had assumed the duty of care that the complaint alleges the Union breached.

Hechler, 481 U.S. at 359-61.


Thompson further stated, citing various authorities omitted here, that "[i]f an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in a collective bargaining agreement specifically indicating an intent

9

to create obligations enforceable against the union by the individual employees." (Emphasis ours.) In this case the plaintiffs neither alleged nor demonstrated that such a provision existed in the collective bargaining agreement material to this case.[3]

We concur with the action of the trial court in granting the summary judgment in favor of the Union defendants. Since the same disposition would have resulted had the plaintiffs been allowed to amend their complaint to name Steve King as a defendant, we find no error in the court's action in denying the amendment.

## KENCO GROUP, INC.

As hereinbefore noted, Kenco Group, Inc., is the owner of the parcel of land upon which the warehouse building was being constructed. Kenco contracted with Morgan whereby Morgan was to construct the building. The basic issue here is whether Kenco can be held liable for injuries to the employees of Morgan, the

---

[3]It should be noted that as hereinbefore stated, we must take all the well-pleaded, material factual allegations as true, and we must construe the complaint liberally in the plaintiff's favor. We are not at liberty, however, to accept as true conclusory allegations such as the following:

> That at all times relative hereto, the duly (sic) [duty] of safety instruction, direction and supervision on the aforementioned job site was that of the Defendant Local 704, or alternatively, the Defendant Chattanooga Ironworkers JAC. That said Local 704 and Chattanooga Ironworkers JAC breached said duties, which constituted negligence and proximately caused the Plaintiff's decedent's fall and subsequent death.

10

contractor. The general rule is stated in <u>Johnson v. Empe, Inc., et al.</u>, 837 S.W.2d 62 (Tenn. App. 1992):

> An owner of premises who employs a contractor to perform work on the property, but who remains in control of the premises where the work is being done, owes to the employees of the contractor a duty to exercise ordinary care in the management of the premises in order to avoid exposing the employees to an unreasonable risk of harm.
>
> If, however, the contractor had complete control of the premises where the accident occurred and the owner had retained no control of that part of the premises except to the extent of determining if the work was being performed according to the contract, then the owner owes no duty of care to the employees of the contractor.
>
> The rule may be more concisely stated. The law places the duty upon the person in control of premises to exercise reasonable and ordinary care, under the circumstances, not to cause injury to one lawfully upon the premises. <u>See</u> <u>Ruth v. Ruth</u>, 372 S.W.2d 285, (Tenn. 1963).

<u>Johnson v. Empe</u>, 837 S.W.2d 62, 65.

In this case, the record clearly reflects that Morgan, the contractor was in control of the premises. Kenco did not remain in control of the premises where the work is being done in a manner sufficient to impose liability on the theory of control.

<u>Johnson v. Empe</u>, supra, does not address the issue of circumstances involving hazardous or dangerous activities or whether, under circumstances where hazardous or dangerous activities are being conducted, the duty of the landowner was delegable. In <u>Cooper v. Metropolitan Government, etc.</u>, 628 S.W.2d 30 (Tenn.

11

App. 1981), Judge Cantrell in an excellent and scholarly opinion clearly enunciated the rule applicable here.  We take the liberty of quoting at some length from the opinion:

> Assuming that work involved in this case was inherently dangerous and conceding that an employer may not contract away his liability to the general public for harm caused in the performance of that activity, a question remains as to whether that liability extends to employees of the contractor. (Emphasis in original.) Some courts have held an employer liable to the employee of a contractor for injuries arising in the performance of inherently dangerous work. Schultz & Lindsey Constr. Co. v. Erickson, 352 F.2d 425 (8th Cir. 1965); Chicago Economic Fuel Gas Co. v. Myers, 168 Ill. 139, 48 N.E. 66 (1897); Mallory v. Louisiana Pure Ice & Supply Co., 320 Mo. 95, 6 S.W.2d 617 (1928). Other courts have made a distinction between the public at large and the employees of the contractor. In those states the employer's liability is only to members of the general public and does not extend to employees of the contractor. Corban v. Skelly Oil Co., 256 F.2d 775 (5th Cir. 1958); Hurst v. Gulf Oil Corp., 251 F.2d 836 (5th Cir.), cert denied, 358 U.S. 827, 79 S.Ct. 44, 3 L.Ed.2d 66 (1958); Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330 (1965); Epperly v. Seattle, 65 Wash.2d 777, 399 P.2d 591 (1965).

> This question apparently has not been decided directly in Tennessee although authority for the latter position can be found in the case of Jones v. City of Dyersburg, 59 Tenn. App. 354, 440 S.W.2d 809 (1967). In that case an employee of a subcontractor was injured while working on power lines owned by the City of Dyersburg. In that case the allegations against the City were that it had not provided the workman a safe place in which to work and not that it had a duty to the workman of the subcontractor based on the inherently dangerous nature of the work. However, the Court of Appeals in reversing a judgment for the workman against the City said:

> > We hold that the City of Dyersburg was not obligated under its contract nor under its nondelegable duty as a supplier of electricity to

12

> supervise the performance of the contract by Safeco
> and its employees so as to prevent the employees
> being injured by their own negligence. It would
> have been impractical and would have in effect
> negatived the very contract which it awarded
> Brayton for the City of Dyersburg to have been
> required to furnish men to supervise all of the
> phases of the electrical work being done by the
> subcontractor Safeco so as to prevent Safeco's
> employees from injuring themselves.

59 Tenn. App. at 392-93, 440 S.W.2d at 826.

> We think this is authority for the rule of non-
> liability of an employer to employees of a contractor
> even though the contract involves work that is inherently
> or intrinsically dangerous. We also think this is the
> preferable rule. Otherwise, an employer having work to be
> performed of an inherently dangerous nature and wishing
> to employ a contractor skilled in the performance of such
> work in order to minimize the danger to the public at
> large would nevertheless be liable to the employees of
> the contractor for the contractor's negligence. A
> homeowner would be liable to the employees of an
> electrical contractor for failure to inspect the
> equipment of the contractor to make sure that it was
> safe.

Cooper v. Metropolitan Government, etc., 628 S.W.2d 30, 32-33.

Tested under the authorities cited above, we are of the opinion that the action of the trial court in granting summary to Kenco was appropriate.

## KIRBY BUILDING SYSTEMS, INC.

Our next inquiry is whether the trial court erred in granting summary judgment to Kirby. Kirby was the manufacturer and/or seller of the building. The plaintiffs also state a multiplicity

13

of allegations against Kirby. In their brief, however, the appellants have condensed their allegations. The plaintiffs charge that Kirby:

1. Negligently designed and manufactured the metal building which plaintiffs' decedent was helping to erect at the time of his fall.

2. Failed to instruct or adequately instruct the general contractor, architect, owner, Davis, and/or ironworkers, concerning the erection of the said steel building.

3. Failed to warn the general contractor, architect, owner, Davis, and/or ironworkers, concerning the dangers and safety requirements when constructing and erecting their steel and metal buildings.

The appellants rely upon the affidavit of A. O. White, Jr., P.E., to support their allegations against Kirby. A. O. White is a registered professional engineer in the State of Tennessee. We will first examine the contents of the affidavit. Mr. White deposes that he was employed by the Attorney for the plaintiffs and thereafter supplied with documents related to the case and "[a]s a result of review and study of those documents, I have personal knowledge of the matters stated herein." It is difficult to understand how Mr. White can have personal knowledge concerning facts provided to him in "documents relating to this case." Thus, we have some question as to the efficacy of the affidavit under the teachings of Fowler v. Happy Goodwin Family, 575 S.W.2d 496, 498

14

(Tenn. 1978). Nevertheless we have studied Mr. White's affidavit in detail.

Paragraphs 2 and 4 of Mr. White's affidavit state the following:

> 2. Larry Jason Dempsey, while working as an employee of Burroughs Metal Builders, Inc., on the roof of a building being constructed by Kenco/Bonny Oaks, II, at 6301 Enterprise Park Drive in Chattanooga, Tennessee, fell to his death about mid-day on Friday, March 17, 1995. As the decedent attempted to stand up on the roof, he put his hand on an aluminum trim strip which collapsed under his weight. He fell approximately thirty-five feet (35') landing on a concrete floor slab below.

> 4. The supporting steel roof structure and standing seam steel roof deck from which the decedent fell were designed and manufactured ... by Kirby Steel Buildings, Inc. Drawings prepared by Kirby did not show or describe a safe method for installing aluminum trim strips (also called Yeager strips) in order to enhance aesthetic appearance of the finished insulated roof deck. It was a Yeager strip which collapsed beneath the decedent. ... .

There is evidence in the record to demonstrate, by inference at least, that the cause of the decedent's fall was the Yeager strip. The only witness to the fall, Mr. Terry Tanner testified by deposition that he did not know why the decedent slipped.[4] He was asked the following questions and gave the following answers:

---

[4]The deposition of Mr. Tanner has been submitted to this court in condensed form, i.e. four pages of the deposition have been reduced to fit on one letter sized page, a practice which we find to be undesirable. See Rule 30, Tennessee Rules of Appellate Procedure.

Q.   Just tell us what happened insofar as his [the decedent] holding onto the skylight trim or placing it and the accident.

A.   He placed the skylight trim out on the mark and I started to screw the skylight rim down and I looked up and saw Brian had started to put the pipe in the insulation to carry it over to the edge of the roof and I told Jason that I didn't need him, that I could handle that, that he could go over and help Brian get the insulation ready to roll out.

Q.   What happened then?

A.   At that time he started to get up, he was on his hands and knees and next thing I knew he was in the hole.

Q.   When you say he was on his hands and knees, you talking [sic] about kneeling on the platform?

A.   Right.

Q.   Were you also in a kneeling or crouched position?

A.   No, I was in a standing position with one foot on the bar joist — one foot on the skylight trim and one foot on the platform.

Q.   Did you see him fall?

A.   Yes, I saw him after he had slipped, I didn't actually see him slip or fall.

Q.   Do you know why he slipped?

A.   No.

Q.   Had you finished putting the skylight trim down when he slipped?

A.   I don't recall if I had placed the screw in or not, I knew I was prepared to and I think maybe I had started to put the screw down at the point that he slipped and I reached for him.

Q.   In looking at Exhibit No. 1, can you identify Exhibit 1 as being the area where the accident occurred?

16

A.   It could be, yes.

Q.   Let me hand you another photograph and ask you if
     you can identify this photograph?

A.   Yes.

Q.   Can you tell me what that photograph shows?

A.   That shows the roof and the platform and the trim
     strip hanging down from the building.

                    *      *      *      *

Q.   When you talk about the trim strip hanging down in
     Exhibit No. 5, what are you referring to in that
     photograph?

A.   The trim strip hanging down from the roof of the
     building.

Q.   Is that the Yeager trim strip?

A.   Yes.

                    *      *      *      *

Q.   What happened to the Yeager trim strip after the
     fall?

A.   The Yeager trim strip broke lose [sic] from the end
     of the building where it had been fastened.

Q.   Do you know if he hit the Yeager trim strip when he
     fell?

A.   Yes, he did.

                    *      *      *      *


There is nothing in the record to suggest that the Yeager

strip was negligently designed or manufactured or that the product

was defective or unreasonably dangerous.  Mr. White ventured no

opinion on these points.

17

Our Supreme Court has addressed the duty to warn, or lack thereof, in products liability cases in Goode v. Tamko Asphault Products, Inc., 783 S.W.2d 184 (Tenn. 1989). In Goode, the plaintiff claimed that he contracted a skin pigmentation condition, diagnosed as vitiligo, as a result of using asphalt roof shingles and felt manufactured by the defendants. There were no warnings. The Supreme Court stated:

Plaintiff's theory of recovery in this case is that defendants were guilty of a negligent breach of duty to warn of the non-apparent danger associated with the use of their roofing products. A failure to discharge a duty to warn, whether negligent or innocent, is expressly included in the definition of a products liability action in T.C.A. § 29-28-102(6). T.C.A. § 29-28-105(a) provides that to impose liability on a manufacturer [or seller] it must be shown that the product was in a defective condition, or an unreasonably dangerous condition, at the time it left the manufacturer's [or seller's] control. In this case there is no contention that the products were in a defective condition. Thus, the issue is whether defendant's roofing products were in an unreasonably dangerous condition at the time the products left the control of each manufacturer [or seller]. It follows that if the products were unreasonably dangerous, defendants had a duty to put an appropriate warning on the labels, but if the products were not unreasonably dangerous, the law imposes no duty to warn.

The definition of "unreasonably dangerous" that is applicable to the facts in this case is the following portion of T.C.A. § 29-28-102(8):

(8) "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, ... .

Goode, 783 S.W.2d 184, 187.

18

We note also that T.C.A. § 29-28-102(6) not only deals with an action for failure to warn but also encompasses a failure to instruct.

We are of the opinion that the observations made in <u>Goode</u> are applicable to the case at hand. We, therefore, find that the affidavit of Mr. White, together with the record considered as a whole, are insufficient to overcome a properly supported motion for a summary judgment.

## THE WAMP ALLIANCE[5]

The appellants claim that the defendant, Wamp, was the architect for the Kenco Warehouse project. Against Wamp, they also list a multiplicity of allegations wherein they assert that Wamp was negligent. Specifically they charge Wamp with:

1.  Failure to develop, publish and disseminate structural design standards to the contractors and/or employees.

2.  Failure to properly warn the plaintiffs' decedent of the dangers associated with working in high and dangerous locations and failing to prepare him to protect himself against such dangers.

---

[5]Wamp's motion to dismiss was treated by the court as a motion for summary judgment since matters outside the pleadings were considered by the court.

19

3. Failure to make provide [sic] adequate safety personnel on site for erection of the structural steel.

4. Failure to provide proper safety specifications for the use of safety gear and equipment on the subject project.

5. Preparing drawings and specifications requiring and using dangerous methods of construction in connection with the subject project, without providing adequate warnings of said dangers to Harris, Kenco, Ironworkers, Davis, Burroughs and Morgan.

6. Failure to make proper safety inspections of the subject property.

7. Failure to properly supervise the construction site and process to protect the safety of the plaintiffs' decedent.

8. Failure to properly consult with and advise the defendant Kenco, defendant Harris, defendant Davis, defendant Ironworkers, the subcontractor, Burroughs, or the general contractor, Morgan, concerning construction practices, safety and warnings to workers.

9. Failure to hire a project or structural engineer, or hiring an unqualified one.

10. Negligently entrusting said metal building to contractors, engineers, and architects who were not adequately knowledgeable, and skilled in construction methods used, or failing to hire, designate or require proper contractors, engineers or architects to construct said warehouse building.

It is undisputed that Wamp was hired solely for the purpose of providing drawings of the project in order to get building permits issued. Wamp was not a party to any contract which imposed upon him any other duties. The plaintiffs cite no authority for their claims advanced against Wamp nor have they produced any expert

20

testimony that the actions of Wamp fell below the standards of care for architects.

They further claim that Wamp committed the alleged negligent acts as the agent of either Kenco, Morgan or Kirby. The undisputed evidence is that Wamp was employed solely for the purpose of preparing drawings of the project in order to get building permits issued. Wamp was not a party to contracts between Kenco and Morgan even though he was listed in the contract documents as the architect on the project.

## CONCLUSION

We find no merit in any of the issues advanced by the appellants and urged upon this court as grounds for reversal. Accordingly, we affirm the judgment of the trial court. Costs are assessed to the appellants and this case is remanded to the trial court.

_____
Don T. McMurray, Judge


CONCUR:

_____
Herschel P. Franks, Judge

21

_____
Charles D. Susano, Jr., Judge

IN THE COURT OF APPEALS
AT KNOXVILLE

LARRY DEMPSEY and wife, LISA ) HAMILTON CIRCUIT
DEMPSEY, Co-Administrators of ) C. A. NO. 03A01-9709-CV-00436
the Estate of Larry Jason )
Dempsey, )
  )
      Plaintiffs-Appellants )
  )
  )
  )
  )
  )
vs. ) HON. SAMUEL H. PAYNE
) JUDGE
  )
  )
  )
  )
  )
INTERNATIONAL ASSOCIATION OF ) AFFIRMED AND REMANDED
BRIDGE, STRUCTURAL AND ORNAMEN- )
TAL IRONWORKERS, LARRY G. DAVIS,)
individually and as agent and )
employee of the International )
Association of BRIDGE, )
Structural and Ornamental )
Ironworkers, KIRBY BUILDING )
SYSTEMS, INC., FREELAND HARRIS, )
d/b/a Freeland Harris Consulting)
Engineer and DONALD LOUIS WAMP, )
d/b/a The Wamp Alliance, )
  )
      Defendants-Appellees )


**JUDGMENT**


    This appeal came on to be heard upon the record from the
Circuit Court of Hamilton County, briefs and argument of counsel.
Upon consideration thereof, this Court is of the opinion that there
was no reversible error in the trial court.

The judgment of the trial court is affirmed in all respects and this case is remanded to the trial court. Costs are assessed to the appellants.


PER CURIAM